**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | **CHAPTER 13** |
| **CALVIN L. BRUCE,** ) | |
| ) | **CASE NO. 16-60489** |
| Debtor. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Creditor Roberta M. Logan's ("Ms. Logan's") Amended Objection to the Chapter 13 Plan filed by the Debtor, Calvin L. Bruce (the "Debtor") dated March 16, 2016 ("Objection to Confirmation") and the Debtor's response thereto. The parties each submitted well-reasoned briefs, and on August 17, 2016, the Court held a hearing on Ms. Logan's Objection to Confirmation. Ms. Logan, her counsel, the Debtor, his counsel, and the Trustee appeared at the hearing. The Court heard argument from counsel and testimony from Ms. Logan. The Debtor, however, elected not to testify. The Court took the matter under advisement. The following day, the Debtor filed his Objection to Claim No. 3-1, the claim filed by Ms. Logan. As the substance of the Debtor's objection was fully briefed prior to the August 17 hearing, and each party was afforded ample opportunity to present evidence as to the amount and validity of Ms. Logan's claim, neither party will be prejudiced by the Court considering the merits of Debtor's post-hearing objection.[1] For the reasons set forth below, the Court will sustain Ms. Logan's Objection to the Debtor's Plan Filed March 16, 2016, in part, as well as sustain the

---

[1] *See In re Freeman*, 540 B.R. 129, 136 (Bankr. E.D. Pa. 2015) (finding that denying a Debtor's objection to a claim for failure to follow the typical claims objection procedure "would exalt form over substance, an outcome that is not compelled by the rules of court"); *see also* Fed. R. Bankr. P. 1001 (the bankruptcy rules of court "shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding").

1

Debtor's Objection to Claim No. 3-1 and allow Ms. Logan's priority claim only in the amount of $2,820.00.

## STATEMENT OF THE CASE

The Debtor and Ms. Logan were married in Halifax County, Virginia on December 25, 2005. They had one child together. During the marriage, the Debtor and Ms. Logan obtained an approximately $56,000.00 home equity loan from Wells Fargo secured by a Deed of Trust against the marital residence. Ms. Logan testified that the proceeds from this loan were used to pay off approximately $30,000.00 of debt that the Debtor brought into the marriage, as well as to pay off two cars that were jointly owned, and to pay taxes on an early withdrawal from a 401(k) plan. The Debtor and Ms. Logan divorced on March 23, 2015, and entered into a Property Settlement Agreement ("Settlement Agreement") on that same date. (*See* Pl. Ex. 4 at 8–15.) This agreement was incorporated, but not merged, into the Final Decree of Divorce ("Divorce Decree"). (*See* Pl. Ex. 4 at 4–7.) The Divorce Decree provides that "all matters related to custody, visitation, and/or support of the minor child have previously been addressed by the Halifax County Juvenile and Domestic Relations District Court and are not before this Court for Determination . . . ." (Divorce Decree at 1.)

The Settlement Agreement provides for the following division of martial debts:

> The parties collected both joint and separate debts during the marriage. As full and final settlement of his portion of the marital debt Husband shall pay Wife a one-time payment of $33,420.00 by March 22, 2016. Such payment shall be applied towards the equity line on the marital property. Until payment of the one-time payment of $33,420.00, Husband shall pay $130 per month towards the equity line loan. Such payment may be made by Husband directly to the Bank holding the equity line but in any event shall be made prior to the payment due date each month.
> Once Husband makes this one-time payment of $33,420.00, his obligation to pay $130/month shall terminate. Further, within ninty [sic] (90) days of Husband making the one-time payment, Wife shall refinance the equity line to remove Husband's name from the loan.

> After payment of the $33,420.00, Wife shall become solely responsible for all debt from the marriage and hold Husband blameless from any harm which may arise from Wife's non-payment of said debts. Husband's above-stated payment to Wife includes $2,820.00 in prior child support arrearages.
> Other than listed herein, each of the Parties hereto assume sole and separate responsibility for any debts which heretofore created in his or her separate name. The Parties further agree that they will not, at any time hereafter, contract any debt or debts, charges or liabilities whatsoever for which the other party hereto may become personally liable or answerable; both of the Parties hereto agree that they will not hereafter make any contract in the name of the other.
> Each of the Parties hereto shall pay all debts incurred by him or her after the date of this agreement and shall indemnify the other against any liability therefore.

(Settlement Agreement ¶ IX.) As to spousal support, the Settlement Agreement states: "Neither party hereto will make any claim whatsoever against the other for spousal support." (*Id.* ¶ XVII.)

The Debtor filed his petition under Chapter 13 of the Bankruptcy Code on March 12, 2016. (Docket No. 1.) The Debtor filed his first Chapter 13 plan on March 12, 2016, identifying Ms. Logan's claim as a priority claim for a domestic support obligation in the amount of $33,420.00. (Docket No. 2.) On March 16, 2016, the Debtor filed an amended plan that identified Ms. Logan's priority claim only in the amount of $0.01 (the "Amended Plan"). (Docket No. 10.) Ms. Logan filed her Objection to Confirmation and Proof of Claim on May 4, 2016. (Docket No. 18; Claim No. 3-1.) She amended her Objection to Confirmation on June 3, 2016. (Docket No. 22.)

Ms. Logan conducted a Rule 2004 Examination of the Debtor on July 22, 2016. In the course of that examination, the Debtor stated that he considered the $33,420.00 lump sum payment to be a domestic support obligation that would ensure that Ms. Logan could pay the mortgage on her home, where she lived with their daughter. (*See* Pl. ex. 1 at 9:21–11:9; 37:16–38:8.) In the course of this examination, the Debtor also revealed that his income has increased by $7,000 to $40,445.00 per year since the filing of his Amended Plan. (*Id.* at 20:12–21:25.)

3

Prior to the confirmation hearing, the parties fully briefed the issue of whether Ms. Logan's claim is a priority unsecured claim arising from a domestic support obligation pursuant to 11 U.S.C. § 507(a)(1). In support of her position, Ms. Logan relies upon the intent of both parties at the time the Settlement Agreement was entered into. (Movant's Brief at 4–5.) She also contends that the function served by the lump sum $33,420.00 payment at the time of the agreement was to provide Ms. Logan and their daughter with shelter, a necessity of life. (*Id.* at 5–6.) In response, the Debtor asserts that the language and substance of the agreement does not show an intent for any portion other than the $2,280.00 for child support arrearages to create a domestic support obligation, that the agreement specifically provides that the payment was for full and final settlement of marital debts, that there is no evidence the Debtor was in a superior financial position when the agreement was entered into, and that the purpose of the lump sum payment was not to provide for common necessities, but rather to provide for an equitable division of debts. (Debtor's Brief at 3–6.)

The confirmation hearing was held on August 17, 2016. Although the Debtor was present to testify, Ms. Logan's counsel read the Debtor's 2004 Examination testimony into the record without objection. Ms. Logan testified that the home equity line loan was entered into for debt consolidation purposes, and she testified as to the way the proceeds were applied. *See supra*. Ms. Logan went on to state that the intent of the Parties was that if the Debtor would pay part of the equity loan, such payment would be "in lieu of spousal support." She indicated that the parties had further agreed that if the Debtor failed to make this payment, she could then seek spousal support. The written Settlement Agreement makes no mention of these matters. The Debtor was provided an opportunity to testify, and declined to do so. The Debtor submitted no evidence in support of his position, and the Trustee offered no position on the matter at hand. The Court

heard argument from counsel for Ms. Logan and the Debtor, and took the matter under advisement. On August 18, 2016, the Debtor filed his objection to Ms. Logan's claim, relying upon the same evidence cited in his earlier brief. (Docket No. 62.) Ms. Logan then filed a response to the Debtor's Objection to Claim 3-1 on August 23, 2016, in which she reiterates the evidence produced at the August 17 hearing and requests the Court deny the Debtor's objection and make a finding that the objection was in bad faith. (Docket No. 66.)

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (I), (L), and (O). Given the unorthodox procedural posture upon which this case finds itself before the Court, the Court will first address Ms. Logan's Objection to Confirmation and then proceed to address Debtor's Objection to Ms. Logan's Claim.

**I.     Ms. Logan's Objection to Confirmation.**

"The debtor as plan proponent has the burden of proof as to compliance with Chapter 13 requirements." *In re Brown*, 244 B.R. 603, 607 (Bankr. W.D. Va. 2000) (citing *In re Stewart*, 172 B.R. 14, 15–16 (Bankr. W.D. Va. 1994)). However, "[a] party objecting to plan confirmation bears the burden of proof as to its objection." *Id.* at 608. (citing *In re Segura*, 218 B.R. 166 (Bankr. N.D. Okla. 1998)). The Court shall confirm a Chapter 13 plan if, among other requirements, "the debtor has paid all amounts that are required to be paid under a domestic support obligation." 11 U.S.C. § 1325(a)(8); *see also id.* § 1322(a)(2), (4).

5

The Debtor and Ms. Logan here are in agreement that the Amended Plan does not provide for Ms. Logan's priority claim for a domestic support obligation. Their disagreement stems from whether the amount of the domestic support obligation is $2,820.00 or $33,420.00. The Amended Plan provides for neither of these amounts, and as such Ms. Logan's Objection to Confirmation will be sustained and confirmation of the Amended Plan will be denied. Further, the Debtor did not offer any evidence nor did he make any effort to rebut the assertion that he now has additional disposable income not accounted for in the Amended Plan. The Debtor will be given leave to amend his plan to fully provide for Ms. Logan's priority claim and account for his rise in income. To determine the amount of Ms. Logan's claim, the Court must turn to Debtor's Objection to Ms. Logan's Claim.

## II.     Debtor's Objection to Ms. Logan's Claim.

"When a claimant properly files a proof of claim with all of the required supporting documentation, it is prima facie evidence of the claim's validity and the amount the debtor owes." *In re Hilton*, No. 12-61102, 2013 WL 6229100, at *5 (Bankr. W.D. Va. Dec. 2, 2013) (citing *In re Falwell*, 434 B.R. 779, 784 (Bankr. W.D. Va. 2009)). Once the claimant files a prima facie valid proof of claim, the burden shifts to the debtor to object to the claim and proffer evidence that "must be sufficient to demonstrate the existence of a *true dispute* and must have probative force equal to the contents of the claim." *Falwell*, 434 B.R. at 784 (emphasis in original). If the debtor produces evidence sufficient to rebut the presumption of validity, the burden then shifts back to claimant to prove the validity and amount of her claim—in this case that her obligation meets the requirements a domestic support obligation under 11 U.S.C. § 101(14A). *In re Ludwig*, 502 B.R. 466, 468 (Bankr. W.D. Va. 2013) (citing *In re Hartford Sands, Inc.*, 372 F.3d 637, 640 (4th Cir. 2004)).

6

The burden shifting framework of the typical claims objection procedure laid out in the Code is somewhat muddied here by the fact that the Debtor only saw fit to formally object to Ms. Logan's claim after the confirmation hearing had already been held. The Debtor's conduct of this case has not been a model of efficiency. The Court's concern over this procedural quandary is alleviated, however, by the fact that the Debtor's objection cites the very same evidence he presented in his brief prior to the confirmation hearing and does not raise any new issues with Ms. Logan's claim. As such, the Court will treat the Debtor's claim objection as if it had been filed contemporaneously with his brief as to be able to properly evaluate the merits of the objection within the typical claims objection framework.

Ms. Logan bore the initial burden of proof. Ms. Logan timely filed her proof of claim on May 4, 2016. Ms. Logan attached the Divorce Decree and Settlement Agreement to her proof of claim. These supporting documents were enough to establish the prima facie validity of her claim for a first priority domestic support obligation.[2]

The burden then shifted to the Debtor to object and present evidence to rebut the presumption of validity. The Debtor, first in his reply brief and later in his after-the-fact objection, cites the plain language of the Divorce Decree and Settlement Agreement to demonstrate that the parties delineated between support obligations and property division, and that the payment at issue fell within the provisions dealing with property division. While the Debtor did not produce any evidence beyond the four corners of the documents, the evidence cited in the Divorce Decree and Settlement Agreement was nonetheless "sufficient to demonstrate the existence of a *true dispute*." *Falwell*, 434 B.R. at 784 (emphasis in original). Likewise, this evidence had "probative force equal to the contents of the claim" because the cited

---

[2] An argument can be made that such is not the case, because the written document submitted does not prove what Ms. Logan says it does. Nevertheless, for the purposes of this analysis, the Court will give the proof of claim the benefit of the doubt.

provisions of the Divorce Decree and Settlement Agreement strongly tend to prove that the intent of the parties was to divide marital debts rather than create a domestic support obligation. *Id.* The Debtor did not merely raise procedural defects with the documentation of the proof of claim; he cited substantive provisions in the agreements that are highly probative of his position. *Cf. Falwell*, 434 B.R. at 785–86 (overruling an objection based solely on lack of documentation). This evidence was sufficient to rebut the presumption of validity and shift the burden back to Ms. Logan to demonstrate that, despite the plain language of the Divorce Decree and Settlement Agreement, the parties intended the payment at issue to be a domestic support obligation.

In determining whether Ms. Logan has satisfied her burden, "the critical question the Court must answer is whether the parties intended the obligation as alimony, support, or maintenance at the time the separation agreement was entered." *Ludwig*, 502 B.R. at 468–69 (citing *Tilley v. Jessee*, 789 F.2d 1074, 1078 n.4 (4th Cir. 1986); *In re Monsour*, 372 B.R. 272, 281 (Bankr. W.D. Va. 2007); *In re Austin*, 271 B.R. 97, 105 (Bankr. E.D. Va. 2001)).[3] "If the parties intended the obligation to be a mere division of property, it is not a domestic support obligation." *In re Webber*, No. 15-70705, 2016 WL 2341184, at *3 (Bankr. W.D. Va. May 2, 2016) (citing *Ludwig*, 502 B.R. at 469). "A written agreement between the parties is persuasive evidence of intent. Thus, if the agreement between the parties clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control." *In re Yeates*, 807 F.2d 874, 879 (10th Cir. 1986) (citing *Tilley*, 789 F.2d at 1077) (internal citation omitted).

---

[3] As *Ludwig* and *Webber* noted, "[a]lthough the passage of the 2005 BAPCPA Amendments altered the structure of 11 U.S.C. § 507(a)(1)(A) and added 11 U.S.C. § 101(14A) to the Bankruptcy Code, the cases interpreting the definition of domestic support obligation all looked at whether the underlying obligation was in the nature of alimony, support, or maintenance. As the 2005 BAPCPA Amendments incorporated this into the definition of domestic support obligation in section 101(14A), these earlier cases are still applicable and relevant today." *Ludwig*, 502 B.R. at 468 n.1; *Webber*, 2016 WL 2341184, at *3 n.3.

In determining whether an obligation is "in the nature of alimony, maintenance, or support," the Court considers the following four factors: "(1) the language and substance of the agreement; (2) the relative financial position of the parties when they entered the agreement; (3) the function of the obligation within the agreement; and (4) evidence of overbearing at the time of the agreement." *Webber*, 2016 WL 2341184, at *4 (citing *Ludwig*, 502 B.R. at 469). Each of these factors will be examined in turn.

        *a.*       *The Language and Substance of the Agreement*

As this Court stated in *Webber*:

> When considering the first factor, 'courts have considered the following criteria: labels; details regarding the payments; the context; and finally, what is left out of the agreement. Specifically, labels are significant, but not dispositive; the method, manner, and recipient of the payments are important; context is illustrative; and what is missing can be as important as what is included.'

*Webber*, 2016 WL 2341184, at *4 (quoting *Ludwig*, 502 B.R. at 469).

Here, the obligation in question is part of the Settlement Agreement. Specifically, it arises under the provision detailing the division of debts between the parties. (Settlement Agreement ¶ IX.) While the Debtor is to make the lump sum payment directly to Ms. Logan, Ms. Logan is then obligated to send the payment to a specific creditor to pay off a specific debt. (*Id.*) The agreement goes further to expressly state that neither party will make any claim for spousal support. (*Id.* ¶ XVII.) In addition, child custody and child support are both addressed in a separate order of the Halifax County J&DR Court. (*Id.* ¶¶ II–III.) The agreement here begs the Court to make the same observation as made by one member of the *Tilley* panel, "if this agreement does not reveal an intent to separate [spousal support] from a property settlement, it is virtually impossible to envision a written agreement that could do so." 789 F.2d at 1078. Here, just as in that case, "[w]hile the agreement could not . . . be determinative on the issue, . . . it

9

erected a substantial obstacle which [claimant] was required to overcome." *Id.* This factor weighs heavily in the Debtor's favor.

> b.  *The Relative Financial Positions of the Parties When they Entered into the Agreement*

Ms. Logan does not argue that there was a disparity in the financial position of the parties, and neither party has presented any evidence to suggest that one existed. Here, as in *Webber*, each party was represented by counsel at the time the divorce decree was entered. (Divorce Decree at 3–4 (signature blocks)); *Webber*, 2016 WL 2341184, at *4. Ms. Logan testified that she has some college experience and a certificate in respiratory therapy. The Court cannot conclude based upon the evidence presented that the Debtor was in a superior financial position entering into the Settlement Agreement, thus this factor weighs in favor of the Debtor.

> c.  *The Function of the Obligation Within the Agreement*

As to the third factor, "courts have generally looked to see if the obligation serves to provide for the common necessities of the other spouse." *Ludwig*, 502 B.R. at 470 (citing *Monsour*, 372 B.R. at 282; *Nicolae v. Mirea* (*In re Mirea*), No. 11-11266-BFK, 2012 WL 3042239, at *7 (Bankr. E.D. Va. July 25, 2012)). "In making this determination, courts have considered whether the obligation is for past or future obligations, whether it allocates joint debts, or whether it divides property." *Id.* (citing *Austin*, 271 B.R. at 108).

Ms. Logan relies upon the Debtor's testimony at the 2004 Examination that he intended the payment on the home equity loan would be a domestic support obligation, and that making this payment would allow Ms. Logan to keep paying the mortgage on the home she shared with their daughter. (*See* Pl. Ex. 1.) The Debtor was provided numerous opportunities to refute this testimony, including in his review of the transcript of the 2004 Examination, in his brief filed prior to the August 17 hearing, or by testifying at the hearing. The Debtor did not avail himself

10

of any of these opportunities to explain his statements, thus the Court must conclude that this was, in fact, the Debtor's intent. Ms. Logan, however, offered testimony that clarified what the parties intended at the time of the Settlement Agreement. She testified that the lump sum equity payment would be "in lieu of spousal support" and that, if it were not paid, the parties agreed that she could then seek spousal support. Despite the obligation remaining unpaid, Ms. Logan has not attempted to seek spousal support outside the agreement.

The *Ludwig* case is particularly illustrative here. Just as in that case, the underlying obligation is based upon a past joint debt the parties had at the time of their divorce. *Ludwig*, 502 B.R. at 470. Ms. Logan was obligated by the terms of the agreement to use the lump sum payment to pay down the equity loan. (Settlement Agreement ¶ IX.) Further, Ms. Logan's testimony that the equity loan payment would be "in lieu of spousal support" is strikingly similar to the claimant's testimony in *Ludwig*. There, Ms. Miller wrote in her response to the Debtor's objection that "I chose to have [the Debtor] pay his portion of our marital debt instead of collecting child support or spousal support." *Id.* The Court in *Ludwig* found this that the agreement "exhibit[ed] a quid-pro-quo characteristic that is more akin to a property settlement and not in the nature of alimony, support, or maintenance." *Id.*

In support of her position, Ms. Logan cites *In re Baker*, No. 12-01090-8-SWH, 2012 WL 6186683, at *1 (Bankr. E.D. N.C. Dec. 12, 2012). That case is distinguishable from the present matter. In *Baker*, the debtor was responsible pursuant to a provision of the divorce decree to pay 70% of the balance of a home equity line of credit. The court found that "in essence, [the obligation] provides Ms. Baker and her son with what many courts have deemed to be a necessity of life, *i.e.* the obligation assists in the provision of shelter for Ms. Baker and her son." *Id.* at *5. The court went on to analogize the payments to an obligation to make mortgage

11

payments. *Id.* It is notable that the court discusses the large income disparity between the debtor and claimant.[4] In addition, the claimant had custody of the couple's son who suffered from mental impairments. The court ultimately found "that the most indicative factors—the nature of the obligation, a dependent child, disparity in earning power, and the inadequacy of other support—all support a conclusion that the [home equity line of credit] is in the nature of support." *Id.* Ms. Logan here has not alleged a disparity in income, or inadequacy of other support. In fact, the parties in the present case waived their rights to spousal support. *Compare id.* at *1 (indicating that debtor was to pay "$1,750 per month as alimony for support and maintenance" as part of the divorce decree), *with* Settlement Agreement ¶ XVII ("Neither party hereto will make any claim whatsoever against the other for spousal support.").

Here, the obligation at issue is simply a lump sum division of a marital debt. Ms. Logan's testimony that the couple agreed to divide the marital debt in lieu of spousal support demonstrates that this was a quid-pro-quo agreement, not at all unlike the one present in *Ludwig*. In exchange for Ms. Logan not seeking spousal support, the Debtor agreed to pay $30,600.00 towards paying off the home equity line of credit. This factor also weighs in favor of the Debtor.

---

[4] The *Baker* court remarked:

> There was also a large disparity between the debtor's and Ms. Baker's income at the time of the divorce proceeding, with the debtor making approximately $9,700 monthly and Ms. Baker making approximately $4,030. In reference to their relative earning power, the state court judge specifically described the debtor as the 'primary bread-winner in the family,' and Ms. Baker as the spouse that 'taught school and has been responsible for child care and housekeeping.' This characterization of each party's respective role within the family suggests that the state court judge was attempting to balance the unequal incomes and relative earning power between the debtor and Ms. Baker with the Divorce Decree.

*Id.* at *5.

      *d.*  *Evidence of Overbearing at the Time of the Agreement*

  Here, Ms. Logan has not offered any evidence of overbearing at the time of the agreement. Both parties were represented by counsel during the divorce proceedings. (Divorce Decree at 3–4 (signature blocks).) The Settlement Agreement also acknowledges that they were advised of their right to have counsel review the agreement prior to execution and waived any defenses based on lack of knowledge or understanding of the terms of the agreement. (Property Settlement Agreement ¶ XVI.) Thus, this factor weighs in favor of the Debtor.

  The Debtor has produced very little evidence in this matter beyond the agreement itself, and made no effort whatsoever to refute Ms. Logan's testimony, or to clarify his own earlier admissions. Ms. Logan would have the Court rely upon the lay Debtor's unrebutted conclusory statement that he intended the obligation to be a domestic support obligation as determinative in this matter. While the Court must reach a decision based on the record before it, a lay Debtor's statement that an obligation was intended to be a domestic support obligation cannot make it so when the weight of the evidence in the agreement itself demonstrates that it does not meet the requirements under the Code.

  Ms. Logan would have the Court decide that at the time the parties signed the Settlement Agreement, despite clear and unambiguous language to the contrary, the advice of counsel, and the inclusion of language stating that "the text does set forth the Agreement in the manner they had intended," the parties nonetheless intended the home equity loan payment to function as spousal support. (Settlement Agreement ¶ XIV.) The Court is mindful of the Debtor's poor strategic choice in declining to testify and clarify his earlier admission, but this fact alone cannot compel the Court to ignore the plain language of the Divorce Decree and the Settlement Agreement. The Debtor's burden upon objecting to Ms. Logan's claim was not a mandate to

produce extrinsic evidence; rather, he was free to rely upon the evidence contained in the substance of the agreement itself if that evidence was sufficient to demonstrate a true dispute as to the validity or amount of the claim.

Upon thorough analysis of the facts on the record within the framework of the four factors this Court is to consider, the Court finds Ms. Logan has not met her burden to overcome the evidence plain on the face of the Settlement Agreement that the $30,600.00 lump sum payment on the home equity line is not a domestic support obligation, but rather a mere agreement on the division of a marital debt.

## CONCLUSION

For the foregoing reasons, the Court will sustain Ms. Logan's Objection to the Debtor's Plan Filed March 16, 2016, and confirmation of the plan will be denied. The Court will also sustain the Debtor's Objection to Claim 3-1 and allow Ms. Logan's priority claim only in the amount of $2,820.00 for prior child support arrearages and the hearing on the claim objection shall be cancelled. Ms. Logan will retain her $30,600.00 claim as a claim for general unsecured debt. The Debtor will be given twenty-one (21) days from the date of the corresponding Order to file a second amended plan that treats Ms. Logan's claim accordingly and accounts for the Debtor's rise in income. A separate Order will be entered contemporaneously herewith.

Decided this 6th day of September, 2016

_____
UNITED STATES BANKRUPTCY JUDGE

14